

U.S. Department of Justice

United States Attorney
Eastern District of New York

NB:JMM

610 Federal Plaza
Central Islip, New York 11722

May 6, 2014

By ECF with Courtesy Copy by Interoffice Mail

The Honorable Arthur D. Spatt
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:   United States v. Aaron Wider et al.
               Criminal No. 14-221(ADS)(GRB)

Dear Judge Spatt:

      In anticipation of the above-named defendant's bail application, which is scheduled before the Court tomorrow, the government submits this letter in reply to the defendant's letter of July 24, 2014, and to supplement the government's memorandum and proffer in support of detention, filed on May 6, 2014.

I.    Legal Authority for Detention

      Counsel for the defendant argues that cases cited by the government in its May 6, 2014 letter advocating for detention on dangerousness grounds collectively represent caselaw that is "a far cry from the case against" Wider. Defendant's Letter of July 24, 2014 at p. 2. See e.g., United States v. Colombo, 777 F.2d at 100; United States v. Ferranti, 66 F.3d 540, 543 (2d Cir. 1995)(Mafia leader detained notwithstanding $1,000,000 bond that "would have deterred flight, not danger").

      While the defendants in the cited case may be of a different type from the defendant here, they nonetheless stand for applicable principle that where the government has proffered sufficient facts to establish a defendant's danger to the community, the posting of collateral that might "reasonably assure the appearance of [the defendant] at trial, will not reasonably assure the safety of the community." United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001).

      This principle is not limited to violent crimes or narcotics cases. In United States v. LaFontaine, 210 F.3d 125, 133-34 (2d Cir. 2000), a defendant charged with health care fraud who while out on bail engaged in witness tampering and perjury was properly

detained based on the unrebutted proffer of the government as a danger to the community for which no conditions of release existed. "[W]e see no persuasive reason to distinguish between violent and nonviolent obstruction for the purpose of determining whether proffers are an acceptable method of proof," to support a finding of detention on dangerousness grounds. Id. at 131-32.

In this case, in litigation in Bankruptcy Court and in the Eastern District of Pennsylvania, two courts found Wider to have engaged in "hostile" and fraudulent conduct aimed at the continuation of victimizing creditors, the same creditor banks that were defrauded in the instant indictment. See Government's May 6, 2014 Bail Letter at 4-6. And as the government proffered in its May 6 detention memorandum, when arrested in his home, FBI agents found documents in Wider's home fraudulently purporting to transfer title to certain properties that were known to already been in foreclosure. Id. at 7. Wider himself was caught in a consensual recording with a cooperator prior to his arrest discussing just how he could create such counterfeit documents. Id. at 6.

In sum, that the defendant is not charged with a violent crime or narcotics offense is irrelevant on the question whether conditions exist that would reasonably assure that he will not constitute a danger to the community. Given his criminal history, his dangerous use of alcohol while driving, coupled with judicial findings that he has impeded litigation to further victimize creditors, there is no question that the defendant should be detained pending trial.

II.     Wider's Proffered Collateral

Although the defendant does not address any of the facts proffered by the government in favor of a finding of dangerousness and detention, Wider nonetheless offers four properties as collateral for his release. Two of the properties---Wider's home at 32 Shore Drive West, Copaigue, New York, and 63 Carmen Hill Road, Massapequa, New York--- are subject to forfeiture as the proceeds of the bank fraud conspiracy. See Indictment at ¶¶ 21(g) and 21(k).

The Bail Reform Act, at 18 U.S.C. §3142(g), prohibits a defendant from using criminal proceeds as collateral to secure bail. Section 3142(g)(4) provides, in pertinent part:

> In considering the conditions of release . . . the judicial officer . . . shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use of collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

2

Wider's home at 32 Shore Drive West was acquired as a result of the fraudulent bank scheme that is now charged in the Indictment in this case. Real estate closing files and loan documentation reveals that on or about June 21, 2005, Wider purchased the home for $535,000. On the same day, Wider conveyed title to the property to a sham trust and then re-purchased the home from the sham trust for $980,000, that is, approximately $445,000 more than what he paid the true seller on the same day. Wider then gave his own company, HTFC, two mortgages supposedly secured by the now inflated value of home. The first mortgage was for $685,000, and a second mortgage was given for $99,000. The funding for these mortgages did not originate with HTFC. Rather, the money was obtained from one of HTFC's warehouse lenders, Georgia Banking Company, a federally-insured bank, which wired the proceeds to the escrow account of indicted co-defendant Eric Finger.

An analysis of the disbursements of the loan proceeds reflects that over $116,000 payable to the sham trust used in the transaction was deposited to the bank account in the name of another Wider-controlled company known as GCF. From there, Wider fraudulently pocketed over $116,000 in proceeds from this transaction.

HTFC sold its mortgage on the property to GMAC in the secondary mortgage market. In doing so, Wider concealed that the home had actually been purchased on the same day $535,000. Instead, he and HTFC represented that the home had been bought for $980,000 and that the seller was the sham trust. The documentation submitted to the secondary market purchaser also contained a certification of funds from Wider falsely representing that he paid $196,000 as a down payment towards the purchase out of his own funds, and that Wider possessed $1.8 million in cash, stock and other assets. In fact, an analysis of WIDER's various bank accounts at the time reveal that WIDER had less than $50,000 in his name in 2005. Today, as the Court is aware, he has told various tales: to Pretrial he claimed that he had a negative net worth of $40 million, and that he had been unemployed since the shutting down of HTFC. At a recent status conference before the Court, Wider claimed that he possessed millions in assets. Then again, he has also claimed to be indigent and in ned of appointment of CJA counsel. Now he claims HTFC is in possession of the note on his home, which records establish was actually sold to GMAC.

As the government summarized in its May 6 detention memo, in August 2008, the Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania entered a $14.3 million judgement against Wider and HTFC in the case, <u>GMAC Bank v. HTFC Corp.</u>, 06-CV-5291 as a result of numerous fraudulent loans HTFC sold GMAC. The district court in that same case sanctioned Wider for what it termed his "assault on the deposition proceedings," and other conduct aimed at "impeding, delaying, and frustrating" the proceedings.

It is only further evidence of the defendant's willingness to obstruct any proceeding that he is party to that he would now offer this property as his own collateral. Regardless of his continued efforts at fraud, a <u>lis pendens</u> has existed against his home since February 2011, filed by an apparent successor in interest to GMAC, HSBC Bank.

In sum, this one property offered as collateral demonstrates (a) Wider's continued dangerousness, and (b) the inability of the property to stand as collateral for his bail.

The second property listed in the Indictment's forfeiture notice, 63 Carmen Hill Road, was purchased by the defendant in December 2005 through the identical fraudulent scheme.

The defendant claims that the remaining two properties proffered are subject to foreclosure by the defendant's defunct mortgage bank, HTFC. Wider would offer these properties as collateral. There is absolutely no documentation attached to the motion for bail atht would permit the Court to ascertain whether or not HTFC owns or ever owened the properties, let alone their state worth. Moreover, since HTFC did not possess any assets to fund mortgages, see Indictment at ¶ 1, but instead borrowed money from other lenders, it is simply absurd to suggest that properties in which he has no interest in can serve as collateral for bail, even if the sole issue in this case were the defendant's risk of flight.

V. Conclusion

For the reasons set forth above, as well as the facts proffered in the government's earlier submission, the defendant Wider should continue to be held without bail pending trial.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

/S/

By: _____
James Miskiewicz
Assistant U.S. Attorney
(631) 715-7841