FILED
CLERK
5/3/2016 3:25 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
UNITED STATES,

       -against-                                     MEMORANDUM OF
                                                       DECISION & ORDER
AARON WIDER,                                   14-cr-221 (ADS) (AKT)

               Defendant.
---------------------------------------------------------X

**APPEARANCES:**

**The United States' Attorneys' Office, E.D.N.Y.**
610 Federal Plaza
Central Islip, NY 11722
       By: Allen Lee Bode, Assistant U.S. Attorney
           Artie McConnell, Assistant U.S. Attorney

**Richard A. Miller, Esq.**
*Attorneys for the Defendant Wider*
356 Veterans Memorial Highwaym Suite 3
Commack, NY 11725

**SPATT, District Judge**.

      On January 25, 2016, after a two and a half week trial, a jury convicted the Defendant Aaron Wider ("Wider") of one count of conspiracy to commit bank fraud pursuant to 18 U.S.C. §§ 1349 and 3551.

      Presently before the Court is a motion pursuant to Federal Rule of Criminal Procedure ("Fed. R. Crim. P." or the "Rules") 29 by Wider for a judgment of acquittal.

      For the reasons set forth below, the Rule 29 motion by Wider is denied in its entirety.

## I. BACKGROUND

      This case arises from a criminal indictment (the "Indictment") filed on May 1, 2014 against the Defendants Aaron Wider ("Wider"), Joseph Ferrara ("Ferrara"), Eric Finger ("Finger"), Joseph Mirando ("Mirando"), John Petiton ("Petiton"), and Manjeet Bawa ("Bawa").

The Indictment charged each Defendant with one count of conspiracy to commit bank fraud pursuant to 18 U.S.C. §§ 1349 and 3551.

The Indictment alleged that the Defendants devised a scheme to defraud warehouse lenders and financial institutions of more than $30 million by inflating the collateral value of the properties owned by HFTC Corporation ("HFTC") in order to obtain mortgage funding from lenders in an amount that substantially exceeded the true sales price of those properties.

According to the allegations in the Indictment, Wider was the owner, president, and sole shareholder of HFTC; Ferrara and Bawa purchased residential real estate in Nassau and Suffolk Counties through mortgages issued by HFTC; Petiton was an attorney who created legal entities called trusts into which HFTC transferred all ownership rights of the properties for no money or consideration; Eric Finger acted as the settlement attorney for HFTC; and Mirando prepared false and fraudulent appraisal reports to correspond to the fraudulently inflated purchase prices contained in the allegedly false mortgage loan applications.

On May 27, 2015, the Court accepted the guilty plea of the Defendant Bawa.

On September 15, 2015, the Court accepted the guilty plea of the Defendant Finger.

On October 29, 2015, the Court accepted the guilty plea of the Defendant Petiton.

On January 5, 2016, the three remaining Defendants Wider, Mirando, and Ferrara appeared before United States Magistrate Judge A. Kathleen Tomlinson for jury selection.

On January 6, 2016, the Government filed a letter with the Court stating that after the conclusion of jury selection, counsel for the Defendant Mirando informed the Government that his client wished to plead guilty prior to the commencement of opening statements in the trial, which was scheduled to begin on January 7, 2016.

On January 7, 2016, prior to the commencement of the trial, the Court granted the request by Mirando to withdraw his plea of not guilty and accepted his plea of guilty. Thus, only Wider and Ferrara remained to be tried.

Also on January 7, 2016, prior to the opening statements, the Court gave the following limiting instruction to the jury with regard to Mirando:

> And let me say now that one codefendant is no longer on trial. The defendant Joseph Mirando is no longer on trial. As a result, you will not be asked to reach a verdict as to him.
>
> You are not to be concerned with the fact that he is longer in the case, nor are you to speculate about the reasons why he is no longer part of this trial. And that fact, that he's no longer part of this trial, should not affect or influence your verdict in any manner with respect to the remaining defendants.
>
> You are not to infer anything as a result of his absence from this trial. You must base your verdict as to the two remaining defendants solely on the basis of the evidence or lack of evidence against each of the two remaining defendants.

(Tr. 13:7–20.)

The Defendants did not object to the use of this instruction, nor did they move for a mistrial at that time.

On January 7, 2016, following the instruction, the jury trial commenced. In the Government's case-in-chief, it presented documentary evidence and testimony from co-conspirators, as well as investigators and expert witnesses, suggesting that under the direction of Wider, HFTC used straw buyers to purchase homes; misrepresented the value of those homes on loan applications; forged credit reports and appraisal reports; and created sham trusts.

On January 17, 2016, the Government filed a letter with the Court stating that it intended to call Mirando as a witness in its case-in-chief. In addition, the Government requested that the Court provide the jury with an additional limiting instruction regarding Mirando's testimony.

3

On January 18, 2016, the Defendant Wider filed a motion for a mistrial, arguing that Mirando's presence at jury selection impermissibly tainted the jury pool.

On January 19, 2016, the Court held oral argument on Wider's motion. Ultimately, the Court concluded that Mirando could testify with a proper jury instruction and denied Wider's motion for a mistrial. (See Tr. 1023:24–1025:2.)

Also on January 19, 2016, prior to Mirando testifying, the Court gave the following instruction to the jury:

> Members of the jury, the next witness is going to be Joe Mirando. You may recall that I previously instructed you after he pled guilty after he was selected about Joseph Mirando and I'm going to repeat that now.
>
> The fact that he pled guilty should not affect or influence your verdict in any way. You will now hear testimony from Mr. Mirando about his decision to enter into a guilty plea. You are not to draw any negative inference against either of the two remaining defendants, whatsoever, based on Mirando's decision to enter a guilty plea or testify during this trial. That was a personal decision [on] his part, and has nothing to do with the defendants in this case.
>
> The guilty plea of a person such as Mr. Mirando is not evidence of guilt on the part of any other person, specifically the two remaining defendants. You are not to infer anything from the fact that he pled guilty. That was his, and is his personal decision. Each witness's decision to plead guilty is a personal decision based upon the circumstances and evidence in that person's case and has nothing to do with the two defendants on trial.
>
> So that the fact of the guilty plea by Mr. Mirando may not be used by you in any way as evidence against or unfavorable to the defendants on trial. You as jurors may give Mr. Mirando's testimony such weight that you feel it deserves, keeping in mind that it must be considered with great caution and great care and not evidence of guilt on the part of the two defendants on trial.

(Tr. at 1098:3–1099:6.)

On January 20, 2016, the Government rested, and the Defendants Wider and Ferrara made oral motions pursuant to Rule 29 to dismiss the Indictment. (See Tr. 1283–1290.) The Court denied both motions.

4

Also on January 20, 2016, the Defendant Ferrara presented two witnesses — Kate Termini, a psychologist, and Robert Ferrara, the Defendant's cousin — both of whom offered testimony suggesting that the Defendant Ferrara lacked the capacity to knowingly participate in Wider's fraudulent scheme.

On January 20, 2016, following the testimony of Termini and Ferrara, both Defendants rested.

On January 22, 2016, following closing statements, the jury began their deliberations.

On January 25, 2016, the jury reached a verdict. They found the Defendant Ferrara not guilty of the single count of conspiracy to commit bank fraud, and they found the Defendant Wider guilty of the single count of conspiracy to commit bank fraud.

On February 4, 2016, Wider renewed his motion for acquittal pursuant to Rule 29, asserting that (i) the banks were not "objectively reasonable" victims because there was testimony that the banks could have discovered that HFTC had fraudulently inflated the value of properties on loan applications had they done proper due diligence; (ii) the jury selection was tainted by the fact that Mirando participated in the selection and then decided to plead guilty following the conclusion of jury selection; (iii) the Court should not have permitted Mirando to testify at trial for the Government after he took part in the jury selection as a Defendant; and (iv) there was no evidence as to Wider's income, and therefore it was not reasonable for the jury to conclude that his income was misrepresented on loan applications.

The Government contends that each of these contentions lacks merit and urges the Court to deny Wider's motion.

The Court will address the applicable legal standard and each of Wider's arguments, in turn.

## II. DISCUSSION

### A. The Legal Standard

Under Rule 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). A defendant bears a heavy burden in meeting this standard — "[t]he test for sufficiency is whether, as to a given count, a 'rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'" United States v. Persico, 645 F.3d 85, 104 (2d Cir. 2011) (quoting United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003)). "The court must make that determination with 'the evidence against a particular defendant . . . viewed in a light that is most favorable to the government, . . . and [with] all reasonable inferences . . . resolved in favor of the government.'" United States v. Eppolito, 543 F.3d 25, 45 (2d Cir. 2008) (alterations in original) (quoting United States v. Eppolito, 436 F. Supp. 2d 532, 568 (E.D.N.Y. 2006), *rev'd on other grounds*, 543 F.3d 25 (2d Cir. 2008)).

Thus, "Rule 29(c) does not provide the trial court with an opportunity to 'substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury.'" United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999) (alteration in original) (quoting United States v. Mariani, 725 F.2d 862, 865 (2d Cir. 1984)). Rather, "'[a] court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" United States v. Temple, 447 F.3d 130, 136 (2d Cir. 2006) (alteration in original) (quoting United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999)).

**B. As to an "Objectively Reasonable Victim"**

First, Wider asserts that the "government was required to prove beyond a reasonable doubt that the Defendant placed banks at risk of loss and that the banks did not knowingly accept such risk." (Miller Ltr. Mot. at 1.) He contends that that "there was much evidence, including testimony and documents GeoData and MLS (readily available external sources) that the banks could have and sometimes did consult before deciding to purchase a loan from Defendant Wider's company HFTC." (Id.) Therefore, according to Wider, this testimony proved that the banks "clearly knowingly accepted any risk in purchasing HFTC loans" and as such, no rationale juror could have concluded that the banks were "objectively reasonable victims." (Id.)

For its part, the Government contends that the "evidence proved that Wider repeatedly and deliberately submitted false information to the victim financial institutions, oftentimes forging signatures and entire documents in order to effectuate the scheme." (Gov't Opp'n Ltr. At 2.) Thus, according to the Government, there was more than sufficient evidence for a jury to conclude that Wider intended to and did put the victim-banks at the risk of loss. (See id.)

The Court disagrees with Wider for two reasons.

First, the Court finds problematic his assertion that in order to prove a conspiracy to commit bank fraud, the Government is required to prove that the victims of the bank fraud acted in an "objectively reasonable" way in relying on a defendant's misrepresentations.

"The well established elements of the crime of bank fraud are that the defendant (1) engaged in a course of conduct designed to deceive a federally chartered or insured financial institution into releasing property; and (2) possessed an intent to victimize the institution by exposing it to actual or potential loss." United States v. Barrett, 178 F.3d 643, 647-48 (2d Cir. 1999); accord United States v. Norris, 513 F. App'x 57, 59 (2d Cir. 2013).

With regard to the first element, "the government must prove that the defendant engaged in a deceptive course of conduct by making material misrepresentations." United States v. Rigas, 490 F.3d 208, 231 (2d Cir. 2007) (citing Neder v. United States, 527 U.S. 1, 16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). A false statement, in turn, "is material if it has a 'natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed.'" United States v. Whab, 355 F.3d 155, 163 (2d Cir. 2004) (quoting Neder v. United States, 527 U.S. 1, 16, 119 S. Ct. 1827, 144 L.Ed.2d 35 (1999)).

With regard to the second element, "actual or potential loss to the bank is not an element of the crime of bank fraud but merely a description of the required criminal intent." Barrett, 178 F.3d at 648. Thus, "the bank need not be actually victimized as long as a defendant acted with the requisite intent." Id.; see also United States v. Abakporo, No. SD 12 CR 340 SAS, 2014 WL 2608857, at *2 (S.D.N.Y. June 9, 2014) ("But actual loss is irrelevant for purposes of liability because actual loss is not an element of bank fraud or wire fraud.").

Apparently the Second Circuit has not directly ruled on the question of whether objective reasonableness is an element of all federal fraud crimes. However, the majority of Circuits courts that have addressed this issue have answered the question in the negative. See United States v. Ciccone, 219 F.3d 1078, 1083 (9th Cir.2000) (holding that the objective reasonableness of a victim is not an element of federal fraud statutes); United States v. Biesiadecki, 933 F.2d 539, 544 (7th Cir.1991) (same); United States v. Maxwell, 920 F.2d 1028, 1036 (D.C. Cir. 1990) (same); United States v. Brien, 617 F.2d 299, 311 (1st Cir. 1980) (same).

In support of his position that the Government must show that the victim banks justifiably relied on Wider's representation to sustain a bank fraud charge, Wider cites to United States v. Boyd, 2 F. App'x 86 (2d Cir. 2001) (summary order). However, in that case — which the Court

8

notes is a summary order and is therefore not binding on this Court —, the court assumed without deciding that "objective reasonableness is an element of federal fraud claims." Id. at 90 ("Assuming arguendo that objective reasonableness is an element of federal fraud claims, we find no plain error occurred here because the Government presented sufficient evidence of the victims' background and education and of the plausibility of the scheme to allow a reasonable jury to determine that the victims were objectively reasonable.") (emphasis added). Thus, this case does not stand for the broad proposition that "objective reasonableness" is an element of every federal fraud claim, as Wider contends.

Without any binding law in this Circuit supporting Wider's position that the objective reasonableness of the victim is an element of a federal fraud charge, the Court declines to adopt it, particularly when the majority of other Circuits have ruled to the contrary. See. Falkowitz, 214 F. Supp. 2d at 379 ("Nothing in the text of the [fraud] statutes makes any reference to any subjective test or personal characteristic of the victim. Absent explicit reference in the penal statute itself, an additional requirement articulating the reasonable person standard would have to be judicially imported from civil fraud principles.")

Second, even assuming that the Government was required to prove that the victim-banks acted in an "objectively reasonable" manner in relying on Wider's misrepresentations, there was ample evidence from which a rational juror could have concluded that the victim-banks did do so. As the Government correctly points out, it presented a wealth of testimony and documentary evidence proving that Wider went to great lengths to conceal the nature of his fraudulent schemes from the banks and warehouse lenders who financed and purchased the mortgages on his homes. For example, Finger, a real estate attorney who acted as a settlement attorney in the fraudulent real estate transactions organized by Wider, testified as follows:

9

Q: Tell members of the jury generally what Mr. Wider proposed to you at that time.

A. [Wider] proposed that he was going to go to contract to buy certain properties on Long Island, and that at the same time we were going to conduct what's called a secondary closing simultaneous with the sale of the first closing, whereby the deed would be prepared from the purchaser, Mr. Wider, into a trust that was going to be created. And then property was going to be resold for a significantly higher price[.]

[ . . .]

Q. When he proposed this to you, did you know it was illegal?

A. I knew that it was not legal, absolutely, because the values were made up. They were fake.

Q. And what about the proposal that Mr. Wider made to you made it illegal in your mind at that time?

A. It was a misrepresentation of the property value in order to generate a loan well in excess of what was realistic for the property.

Q. So the transaction, the fake transaction, was designed to get excess money from the banks?

A. Yes.

(Tr. 226–28.)

Similarly, Mirando, who worked as a real estate appraiser for the American Appraisal Services, testified that Wider asked him to create false appraisals forms to induce banks into believing that the properties purchased by Wider were worth far more than their actual value:

Q. And what if anything did [Wider] ask you to do?

A. He wanted me to change [the appraisals], . . . on the bottom of the appraisal form there's three boxes, and they have a little box in them, so he wanted me to switch the box from plans and specs to 'as is.'

[ . . . .]

Q. So when he asked you to switch [the appraisal forms] from plans and specs to as is, did you do that?

10

A. Yes, I did.

Q. And what was your understanding as to what that would mean to anyone reading the appraisal that it says as is?

A. Well, it changes the impression of the appraisal that it's not hypothetical whether the house is actually already been done.

Q. That the house as is worth the higher amount?

A. Correct.

Q. When you made that change on those first three or four appraisals, did you know it was wrong?

A. Yes.

Q. Did you know that it was a crime?

A. Yes.

[. . . .]

Q. And did you do anything on those appraisals to indicate that . . . the inflated value was not the way the house was as is?

A. No. No, I did not.

[. . . .]

Q. Do you know exactly how many inflated appraisals that you did for Aaron Wider?

A. I'm guestimating about 25 to 30 over a period of three and a half, four years.

(Tr. at 1113–15.)

In addition, the Government introduced the testimony of Juliet Buck, an attorney at Nomura Credit and Capital, Inc. ("Nomura"), a company that purchased loans from HFTC. She testified that in determining whether to purchase a mortgage from a company such as HFTC, Nomura would rely on the appraisals and information provided by the mortgage company in the

11

loan application. (Id. at 732–34.) Similarly, Patricia Lantzy, a former employee of Guarantee bank, also testified that she generally relied on the information provided by loan origination companies like HFTC in deciding whether to purchase one of their loans in the secondary market. (Id. at 839.)

This evidence, which represents merely a snapshot of the overwhelming proof offered by the Government at trial, clearly suggests that Wider (i) deliberately structured his scheme to prevent the victim-banks from uncovering his misrepresentations regarding the value of HFTC's underlying properties using, among other things, straw buyers and false appraisals; and (ii) that it was common within the finance industry to rely on representations by the underwriters in loan applications and appraisal reports in determining whether to purchase loans on the secondary market.

Therefore, even assuming that the Government was required to prove that the banks acted in an objective reasonable manner, the Court finds that a rationale factfinder could have easily concluded that the banks acted reasonably in relying on Wider's misrepresentations prior to purchasing the mortgages on his properties in the secondary market. See Boyd, 2 F. App'x at 91 ("Assuming *arguendo* that objective reasonableness is an element of federal fraud claims, we find no plain error occurred here because the Government presented sufficient evidence of the victims' background and education and of the plausibility of the scheme to allow a reasonable jury to determine that the victims were objectively reasonable.").

### C. As to the Jury Selection

Wider also challenges the jury selection process, also known as the *voir dire*, because he contends that the jury pool was tainted by the fact that Mirando was a defendant when *voir dire* began and then pled guilty immediately after the jury had been selected. (See Miller Ltr. at 2.)

Specifically, he asserts that the jury was prejudiced by the potential knowledge of Mirando's guilty plea. (See id.) He also appears to assert that he was prejudiced because he contends that Mirando had been speaking with the Government about pleading guilty prior to the jury selection and had Wider been aware of that alleged fact, he would not have agreed to exercise his challenges to particular jurors jointly with Mirando and Ferrara. (See id.)

In response, the Government (i) submits a sworn affidavit from Robert P. LaRusso, Esq. ("LaRusso"), counsel for Mirando during jury selection, stating that Mirando was not cooperating with the Government prior to or during jury selection; and (ii) asserts that the limiting instruction provided by the Court prior to opening statements was sufficient to ameliorate any prejudice to Wider resulting from Mirando's guilty plea. (See the Gov't Opp'n Ltr. at 3; see also LaRusso Aff. at ¶¶ 6–8.)

Again, the Court finds Wider's argument to be without merit.

The Sixth Amendment guarantees the right to be tried "by an impartial jury." U.S. Const. amend. VI. "The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." Smith v. Phillips, 455 U.S. 209, 217, 102 S. Ct. 940, 946, 71 L. Ed. 2d 78 (1982). To that end, "[a]n impartial jury consists of nothing more than 'jurors who will conscientiously apply the law and find the facts.'" Lockhart v. McCree, 476 U.S. 162, 178, 106 S. Ct. 1758, 1767, 90 L. Ed. 2d 137 (1986) (quoting Wainwright v. Witt, 469 U.S. 412, 423, 105 S. Ct. 844, 852, 83 L.Ed.2d 841 (1985)).

In that regard, the Second Circuit and other Circuit courts have repeatedly held that cautionary instructions regarding the absence of co-defendants who have pled guilty adequately reduces the risk of prejudice to the criminal defendants still on trial. See United States v.

Toliver, 541 F.2d 958, 967 (2d Cir. 1976) (finding no error by a trial judge where a co-conspirator pled guilty after the jury selection but before the beginning of trial because the judge accepted the plea outside the presence of the jury and gave a cautionary instruction); see also United States v. Jones, 566 F.3d 353, 359 (3d Cir. 2009) ("[T]he Court's cautionary instruction to the potential jury regarding the absence of the co-defendants who pled guilty adequately reduced the risk of prejudice to Jones. We have come to similar conclusions when presented with this type of argument in our prior cases.") (collecting cases); United States v. Barrientos, 758 F.2d 1152, 1156 (7th Cir. 1985) ("We . . . hold that when a co-defendant becomes absent midtrial for any reason, the best practice is to acknowledge his absence to the jury and to instruct them that it should have no effect on their deliberations regarding the remaining defendants.").

In this case, the Court did just that. Immediately prior to opening statements, the Court instructed the jury that they should not "infer anything as a result of [Mirando's] absence" or "speculate about the reasons why he is no longer part of th[e] trial." (Tr. 13:7–20.) Rather, the Court directed the jury to "base [their] verdict as to the two remaining defendants solely on the . . . the evidence or lack of evidence against each of the two remaining defendants." (Id.)

Wider does not explain why this instruction was insufficient to prevent undue prejudice to him. To the contrary, the case law discussed above clearly establishes that a cautionary instruction, such as the one issued by the Court, is all that is required to ensure an impartial jury when one of the defendant's co-conspirators pleads guilty prior to or during the trial.

Also, Wider offers no support for the allegation of collusion between the Government and Mirando during jury selection other than an unsubstantiated assertion made in his brief based "upon information and belief." Further, the Government submits a sworn declaration from LaRusso, Mirando's attorney, stating that during jury selection, his client was not working with

14

the Government or pursuing a strategy at odds with Wider and Ferrara. (See LaRusso Aff. at ¶¶ 6–8.)

Therefore, the Court finds Wider's allegation of collusion between Mirando and the Government to be unsupported by the evidence and contradicted by LaRusso's sworn affidavit. Without evidence of prejudice suffered by Wider as a result of Mirando's participation in the jury selection, the Court declines to disturb the jury's verdict on a Rule 29 motion. See United States v. Taylor, No. 11-CR-85-A, 2013 WL 5309120, at *5 (W.D.N.Y. Sept. 19, 2013) ("The defendant's argument that the instruments inflamed the jury and prompted the jury to convict the defendant on the structuring charges is speculative and disregards the strict standard the Court applies on a Rule 29 motion."); United States v. Thompkins, No. S3 04CR.645 (LTS), 2007 WL 1161234, at *2 (S.D.N.Y. Apr. 18, 2007) ("Defendant's arguments are conclusory and speculative, do not discuss any pertinent facts of the case or refer to and/or dispute any of the evidence presented at trial, and thus do not satisfy Defendant's heavy burden of demonstrating that a Rule 29 judgment of acquittal is appropriate in this case.").

**D. As to Mirando's Testimony**

In his present motion, Wider renews his challenge to the Court's decision to permit Mirando to testify after participating in jury selection and subsequently pleading guilty. (See Miller Ltr. at 2.) He acknowledges that the Court gave the jury a cautionary instruction prior to Mirando's testimony but contends that the limiting instruction "was not enough to insure a fair trial." (Id.)

In response, the Government contends that the Court's limiting instruction was sufficient to ensure a fair trial and points to a number of cases in other Circuits recognizing the propriety of such instructions. (See the Gov't Opp'n Ltr. at 3.) The Court agrees.

Wider appears to be correct that the Second Circuit has not directly addressed the propriety of cautionary instructions in the particular circumstances at issue here — namely, where a defendant pleads guilty after jury selection or during trial and then subsequently decides to testify against the remaining defendants.

However, as the Court already noted when denying Wider's first motion for a mistrial, other Circuit Courts have repeatedly found that a limiting instruction is sufficient to mitigate any possible prejudice resulting from the introduction of testimony of a co-Defendant who changes his plea mid-trial. See, e.g., United States v. Olson, 450 F.3d 655, 678 (7th Cir. 2006) (finding that a district court did not abuse its discretion when it admitted the testimony of a co-defendant who negotiated a midtrial plea bargain); United States v. Pierro, 32 F.3d 611, 617 (1st Cir. 1994) ("As a general matter, a mistrial is not automatically required when a codefendant changes his plea in mid-trial . . . . In such a situation, the court ordinarily can proceed with the trial after appropriately instructing the jury concerning the change of plea and the newly proffered testimony."); United States v. Gambino, 926 F.2d 1355, 1364 (3d Cir. 1991) (finding no error in a district court's decision to admit the testimony of a co-defendant who pled guilty on the twelfth day of a twenty-six day trial and subsequently became a witness for the government because the district court issued a curative instruction); United States v. Kilrain, 566 F.2d 979, 983 (5th Cir. 1978) (finding no violation of a defendant's Sixth Amendment right to a fair trial where a district court permitted a paid informant to testify who subsequently pled guilty after the first two days of trial); United States v. Earley, 482 F.2d 53, 59 (10th Cir. 1973) (finding a district court did not abuse its discretion when it admitted the testimony of a co-defendant who pled guilty on the fifth day of trial because the district court "clearly instructed [the jury] that such a plea cannot be considered as evidence of the guilt of the remaining defendant or defendants").

Here, as noted above, the Court instructed the jury twice — once prior to opening statements and again prior to Mirando's testimony — "not to draw any negative inference against either of the two remaining defendants . . . based on Mirando's decision to enter a guilty plea." (Tr. at 13:7–20; 1098:3–1099:6.)

The case law described above clearly authorizes the use of such instructions in scenarios precisely like the one at issue here. For this reason, the Court finds that its cautionary instruction was sufficient to cure any prejudice resulting from permitting Mirando to testify and denies Wider's motion on that basis.

**E. As to Wider's Income**

Finally, Wider "requests that the Court grant a judgment of acquittal based upon the lack of evidence presented at the trial with respect to the borrower's income." (Miller Ltr. at 2.) Although it is not entirely clear, Wider appears to be referring to the Government's contention that HFTC misrepresented the income of the individuals, many of whom were straw purchasers, who had applied for mortgages originated by HFTC as a way to induce warehouse lenders and financial institutions into purchasing and financing those mortgages.

However, Wider fails to explain the significance of these misrepresentations about borrower income with regard to the essential elements required to sustain a conviction against Wider for conspiracy to commit bank fraud.

To the contrary, as the Court has already discussed, the Government presented a wealth of documentary evidence and witness testimony which showed, among other things, that Wider made numerous misrepresentations in loan applications regarding the value of the underlying properties secured by the mortgages at issue; utilized straw purchasers and sham trusts to cover up the conspiracy; and purposefully waited prolonged periods of time to record the transactions

17

evidencing his purchase and sale of the underlying properties to mask the fraud. Therefore, even assuming that the Government failed to adequately prove that Wider lied about borrowers' income on loan applications, there was more than enough evidence from which any rationale factfinder could conclude that Wider engaged in the kind of fraudulent and deceptive conduct required to sustain a charge of conspiracy to commit bank fraud.

Accordingly, the Court also finds Wider's challenge to the sufficiency of the evidence based on the so-called lack of evidence showing that Wider misrepresented borrower income to lack merit.

### III. CONCLUSION

For the foregoing reasons, Wider's post-trial motion for acquittal is denied in its entirety.

**SO ORDERED.**
Dated: Central Islip, New York
May 3, 2016

                                            _/s/ Arthur D. Spatt_
                                             ARTHUR D. SPATT
                                        United States District Judge